UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 2:16-CR-00103-JRG |
| | ) | |
| vs. | ) | |
| | ) | |
| VINCENT LEE FERGUSON, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

All pretrial motions have been referred to the undersigned pursuant to 28 U.S.C. 636(b) for disposition or a report and recommendation regarding disposition by the District Court as appropriate. Defendant, Matthew Martland, filed a Motion for Severance of Defendants at Trial [Doc. 91]. The Government responded [Doc. 111]; Martland submitted a reply [Doc. 122].

The Court granted the motions of Lee Ferguson and Kerry Ferguson to join the motion. [Docs. 95, 96, 100 & 101]. The Court conducted a pretrial conference on November 21 and December 4, 2017. Assistant United States Attorneys David Gunn and Timothy Harker appeared for the Government. The moving Defendants and their counsel were present. The parties declined to present evidence or testimony on the motion but intended to submit late-filed materials in support of severance, specifically law enforcement interview memos [Doc. 143, pp. 326-27, Doc. 142]. Defendants Lee Ferguson and Kerry Ferguson orally withdrew their severance motions at the end of the December 4, 2017, pretrial conference [Doc. 143, pp. 328-29]. Accordingly, their motions to sever will be denied as moot.

**I.    Background and Parties' Positions**

Defendants are former employees of Wellco Enterprises, Inc., a now defunct manufacturer and supplier of military and rugged footwear that sold such footwear to the United States and the

1

public [Docs. 36, 81]. The Superseding Indictment alleges Defendants conspired to commit and committed wire fraud, defrauded the United States, and smuggled goods into the United States by importing military-style boots that were made in China. It also alleges deceptive marketing and sale of the boots as "Made in the USA" and compliant with the Trade Agreements Act of 1979, 19 U.S.C. § 2501 et seq. and the Berry Amendment, 10 U.S.C. § 2533a [*Id.*].

Martland moves the Court to sever his trial on the basis that he will be prejudiced by the spillover effect of evidence that incriminates his co-Defendants, the familial relationship among several co-Defendants and mutually antagonistic defenses. He also argues that severance is warranted to ensure preservation of his rights under the Sixth Amendment Confrontation Clause and applicable case law such as *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

The Government responds that the Sixth Circuit favors joint trials for several reasons, including promotion of economy and justice and avoidance of inconsistent verdicts. The Government asserts a risk of prejudice is low as juries are presumed capable of parsing through the evidence and considering each indictment count and defendant. It argues severance is unnecessary because of a risk of spillover or antagonistic defenses, the alleged conspiracy role was minor, or the evidence against other defendants is more damaging. Finally, the Government contends that statements made during and in furtherance of a conspiracy do not raise Confrontation Clause issues while issues arising from testimonial statements can be addressed via redaction.

## II. Analysis

### A. Applicable Law

Federal Rules of Criminal Procedure 8(b) and 14(a) govern joinder and severance. Rule 8(b) provides for joinder: "The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or

transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count." Joinder of a set of acts or transactions is appropriate when they are "logically interrelated" or form "part of a common scheme or plan." *United States v. Beverly*, 369 F.3d 516, 522 (6th Cir. 2004). Similarly, "joint trials conserve [public] funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial." *United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed. 814 (1986) (citation omitted). Additionally, "[j]oint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability." *Richardson v. March*, 481 U.S. 200, 210, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987). Thus, "[t]here is a preference in the federal system for joint trials." *Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 937, 122 L.Ed. 2d 317 (1993).

In *United States v. Harris*, 9 F.3d 493, 500 (6th Cir. 1993), the Sixth Circuit noted that, in general, "persons indicted together should be tried together." To do otherwise would create problems for the justice system since "[s]eparate trials produce additional labor for judges and juries, which results from the unnecessary repetition of evidence and trial procedures." *United States v. Caver*, 470 F.3d 220, 238 (6th Cir. 2006). Therefore, the "predominant consideration is whether joinder would serve the goals of trial economy and convenience; the primary purpose of this kind of joinder is to ensure that a given transaction need only be proved once." *United States v. Swift*, 809 F.2d 320, 322 (6th Cir. 1987) (quotation omitted).

Rule 14(a) creates an exception to Rule 8(b): "[i]f joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the trial court may . . . sever the defendants." The rule "comes into play if joinder was initially proper under Rule 8 but a joint trial would prejudice one or more defendants." *United States v. Lloyd*, 10 F.3d 1197, 1215 (6th Cir. 1993). Ordinary prejudice that is inherent in any joint trial does not mandate severance. It is

only required when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S at 539; 113 S.Ct. 933. Thus, "a defendant seeking severance at trial bears a strong burden and must demonstrate substantial, undue, or compelling prejudice." *Caver*, 470 F.3d at 238 (quoting *United States v. Davis*, 177 F.3d 552, 558 (6th Cir. 1999)).

Rule 14(a) severance motions fall under the "sound discretion" of the district court. *Zafiro*, 506 U.S. at 541, 113 S.Ct. 933. Courts have typically exercised discretion by refusing to grant severance on the grounds that: (1) a defendant might have a better chance for acquittal if tried separately, (2) the co-defendants had different levels of culpability than the defendant seeking severance, (3) there might be hostility or a conflict of interest between the defendants, or (4) evidence may be admissible against one defendant but not against the others. *See* 1A Charles Alan Wright et al., *Federal Practice and Procedure*, § 223 (4th ed. 2015); *United States v. Gardiner*, 463 F.3d 445, 473 (6th Cir.2006); *Lloyd*, 10 F.3d at 1215. Ultimately, "[t]he risk of prejudice will vary with the facts in each case," and "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539, 113 S.Ct. 933; *see also Swift*, 809 F.2d at 323 ("[A] jury is presumed capable of sorting out evidence and considering each count and each defendant separately").

B.     **Determination Whether Severance is Warranted**

1.     **Spillover Evidence**

a.     **Martland's Substantive Arguments**

Martland's primary basis for requesting severance is his contention that potential spillover evidence from his co-Defendants' charges will prejudice him. In other words, the jury might assign guilt based upon the conduct of and evidence against his co-Defendants rather than relying upon evidence specific to Martland. He asserts several grounds to support his position.

First, Martland argues that no charge in the Superseding Indictment is based upon an overt act by him, thus he is prejudiced by having a trial of his individual culpability addressed in the same proceeding as his co-Defendants. Next, he urges that he has little or no culpability, so the risk of prejudice is increased if he is tried with co-Defendants whom he suggests have higher degrees of culpability. This assertion is made in conjunction with claims that Martland maintained his innocence in statements to law enforcement, lacked knowledge of a scheme, and lacked oversight over various processes at Wellco. Similarly, he claims "many" of the thousands of emails in the case did not involve or were not copied to him. Lastly, he notes that Lee Ferguson has an ownership interest in Wellco and family relationship exists among Lee Ferguson, Kerry Ferguson, Matthew Ferguson and Stephanie Kaemmerer.[1] Martland believes this information could lead to the inference of a conspiracy or "group effort with common interest" that would affect him as a "lower-level salaried employee."

The Supreme Court has recognized the potential for juries to be unable to make a reliable determination as to guilt or innocence if "evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Zafiro*, 506 U.S. at 539, 113 S.Ct. at 938. The Supreme Court has acknowledged that the risk of prejudice is increased "[w]hen many defendants are tried together in a complex case and they have markedly different degrees of culpability." *Id*. However, *Zafiro* makes it clear that "defendants are not entitled to severance merely because they may have a better chance of acquittal in separate cases." *Zafiro*, 506 U.S. at 540, 113 S.Ct. at 939. A risk of prejudice is often "of the type that can be cured with proper instructions" which juries are presumed to follow. *Id.*

---

[1] Lee Ferguson is the father of Kerry Ferguson, Matthew Ferguson and Stephanie Kaemmerer.

Martland's belief that he may be prejudiced by a trial with his co-Defendants even though the Superseding Indictment does not attribute an overt act to him is specious. Not all overt acts in furtherance of the alleged conspiracy need to be alleged. *United States v. Henson*, 848 F.2d 1374, 1385 (6th Cir. 1988). Every Defendant here is charged with the same crimes. Martland is not prejudiced by facing the same counts in the same trial.

Similarly, Martland's argument that his trial should be severed because he is less culpable lacks merit. The primary grounds for the argument for limited or no culpability are his own statements of innocence to law enforcement. He secondarily relies upon statements by co-Defendants, Lee Ferguson, Stephanie Kaemmerer and Neil Streeter memorialized in law enforcement interview memos. Remarks by Ferguson and Kaemmerer suggest the possibility of limited culpability relative to the allegations of removal of "Made in China" labels from imported components. Streeter advised law enforcement that he and others knew boots used to fulfill government contracts were not Berry Amendment compliant and that he certified noncompliant boots were compliant. Martland suggests that Streeter's statements do not inculpate him.

The cited statements suggest the *potential* for limited culpability as to portions of the superseding indictment. However, limited culpability on particular issues within a broader indictment is insufficient to warrant severance under these circumstances. This is particularly true since Martland relies upon select sentences in a handful of interview statements contained in tens of thousands of documents and e-mails provided in discovery about which Martland offers no discussion beyond his proclamation that he is not a party to or copied on "many" of the e-mails. Such grounds for severance are insufficient to demonstrate a markedly different degree of culpability.

Martland next contends that the family relationship of the Fergusons and Kaemmerer and Lee Ferguson's ownership interest in Wellco are prejudicial. Martland makes little effort to

6

Case 2:16-cr-00103-JRG-MCLC  Document 174  Filed 01/30/18  Page 6 of 15
PageID #: 2011

explain this assertion beyond speculating that the existence of the family relationship "can lead to the inference of a conspiracy or group effort with common interest that can result in spillover" to Martland. It is not readily apparent that the jury might view Lee Ferguson's ownership interest or the family relationship as having any bearing on Martland's participation in a conspiracy or the other charged crimes. It is entirely possible, if not likely, that the jury might instead find Martland's participation in a conspiracy amongst family members to be implausible given the old proverb that blood is thicker than water. The Court is unpersuaded.

**b.     Cited Case Authority**

Beyond making factual arguments specific to this case, Martland cites several cases in an effort to support severance. A review of the cases reveals his reliance is misplaced. First, Martland cites to *United States v. McRae*, 702 F.3d 806, 821 (5th Cir. 2012) in which a trial court erred by not granting severance based upon spillover prejudice caused by inflammatory and prejudicial evidence admitted against co-defendants. *McRae* is distinguishable. In *McRae*, three police officers were charged with various crimes arising out of the death of a citizen in the aftermath of hurricane Katrina. But the three officers were not all charged with the same offenses. Officer Warren was only charged with unlawfully shooting the victim. Warren had fired a warning shot at the victim and erroneously believed his shot had not struck him. It had, and the man died. The other officers then engaged in a cover up of this death that included falsifying a police report and setting the victim's body on fire in an effort to destroy evidence. The other officers were also charged in the beatings of two other African American victims. Evidence of those assaults and the use of "degrading racial slurs" toward to victims were introduced. Warren had no connection with those allegations.

The Fifth Circuit found this additional evidence had the effect of associating Warren with the burning of the body and the cover-up. *Id*. at 827. Additionally, emotional testimony by the

decedent's family was admitted against the defendants charged with the burning and cover-up that would have been inadmissible against Warren. The court also felt the government made subtle efforts at trial to link Warren with the other defendants charged with the differing crimes. The court concluded that Warren identified "specific and compelling instances of prejudice" caused by his joinder at trial. *Id.* at 827. There is no meaningful comparison between the facts of *McRae* and those alleged here.

The next case Martland cites regarding spillover prejudice is *United States v. Tellier*, 83 F.3d 578, 582 (2d Cir. 1996). He describes *Tellier* as "holding that severance was necessary where [the] government did not prove existence of a conspiracy to avoid the risk of spillover prejudice to the defendant by evidence of the co-defendants' crimes." *Tellier,* however, involves admissibility of evidence supporting RICO charges. Because RICO charges allow for the introduction of evidence of criminal activities in which a defendant did not participate to prove an enterprise element, the Second Circuit determined that if the RICO counts fail, prejudice would be highly likely relative to the defendants no longer facing the RICO charges. Thus, such defendants should be severed so a jury is not exposed to evidence that is irrelevant to the remaining charges against those defendants. *Id*. *Tellier* is neither illustrative nor persuasive given the readily distinguishable facts, the differing charges amongst the defendants (unlike in this present case), and unique proof to support a RICO charge.

The same is true of *United States v. Burke*, 789 F.Supp.2d 395 (E.D.N.Y. 2011) which also involved RICO charges for some defendants, but not the defendant who sought and was granted severance for the same general reasons as in *Tellier*.

Martland next cites three cases to attempt to bolster the position that severance is warranted because the risk of prejudice is heightened when defendants with "markedly different degrees of culpability" are tried together. He first relies upon *United States v. Ferguson*, 844 F.Supp.2d 810,

Case 2:16-cr-00103-JRG-MCLC Document 174 Filed 01/30/18 Page 8 of 15 PageID #: 2013

8

826 (E.D. Mich. 2012). This case is unhelpful to Martland beyond serving as the source of a general proposition regarding differing levels of culpability. It explains that allegations in support of a motion to sever made "in a conclusory fashion that a majority of the evidence presented . . . will not be applicable to [a defendant], and thus that the jury will not be able to compartmentalize the evidence even with the aid of a limiting instruction" are insufficient. *Id*. at 827. Even if such a characterization of the evidence was true, "the Sixth Circuit has held that the fact that a majority of evidence offered at trial does not implicate a co-defendant does not, without more, justify severance." *Id*. Ultimately, the *Ferguson* court denied the severance motions because the defendants failed to make a strong showing of factually specific and compelling prejudice resulting from a joint trial." *Id*. Martland's motion is much like the one denied in *Ferguson*.

Martland next cites *United States v. Farano*, 749 F.3d 658, 661 (7th Cir. 2014) for the proposition that severance may be appropriate in a "complex case with many defendants, some of whom might only be peripherally involved in the alleged wrongdoing. The danger is that the bit players might not be able to differentiate themselves in the jurors' from the stars." Martland's quoted portion of *Farano* is immediately followed by this statement: "This is not such a case. None of the defendants was a "bit player" in the conspiracy." *Id.* at 661.

As far as the indictment is concerned, Martland is not a "bit player;" rather, he is charged with the same counts as his co-defendants. But for a handful of co-Defendant's statements suggesting Martland's role was limited, the primary grounds for the assertion that he is less or not culpable is his own theory of the case. This does not create the kind of prejudice that would warrant severance.

Lastly, Martland cites *United States v. Wilson*, 605 F.3d 985, 1018 (D.C. Cir. 2010) for the holding that "[w]hen evidence against one or more defendants is 'far more damaging' than the evidence against another defendant, 'the prejudicial spillover may have deprived a defendant of a

9

Case 2:16-cr-00103-JRG-MCLC Document 174 Filed 01/30/18 Page 9 of 15 PageID #: 2014

fair trial.'" 605 F.3d 985, 1018 (D.C. Cir. 2010) (*quoting United States v. Manner*, 887 F.2d 317, 324 (D.C.Cir.1989) and *United States v. Tarantino*, 846 F.2d 1384, 1398 (D.C.Cir.1988)). Immediately after this quote, the D.C. Circuit wrote that the defendant "failed to identify any disparity that could have deprived him of a fair trial." *Id.* Martland's grounds are similarly insufficient to warrant severance.

Martland cites cases, primarily from outside the Sixth Circuit, simply to make general propositions of law while the substance of each weighs against relief. The defendants in these cases were unsuccessful in obtaining severance absent the most compelling of circumstances. None of those compelling circumstances exist in this case to warrant severance.

**2. Antagonistic Defenses**

Martland urges that severance is warranted because of the likelihood of mutually antagonistic defenses at trial. It is not, however, apparent that antagonistic defenses exist here or that any antagonistic defenses that are "irreconcilable" and might lead "the jury [to] justifiably infer that this conflict alone demonstrates both are guilty." *See United States v. Fields*, 763 F.3d 443, 447 (6th Cir. 2014) (quotation omitted).

Mutually antagonistic defenses arise "when one person's claim of innocence is predicated solely on the guilt of a co-defendant," *Harris*, 9 F.3d at 501, such as "when two defendants both claim they are innocent and each accuses the other of the crime." *Zafiro*, 506 U.S. at 540, at 113 S.Ct. 938. Antagonistic defenses are not *per se* prejudicial. *Id.* Simply pointing the finger at a co-defendant is not enough. *See United States v. Crotinger,* 928 F.2d 203, 206 (6th Cir. 1991). "Hostility among defendants or the attempt of one defendant to save himself by inculpating another does not require that defendants be tried separately." *United States v. Fields*, 763 F.3d 443, 457 (6th Cir. 2014) quoting *United States v. Warner,* 971 F.2d 1189, 1196 (6th Cir.1992). Instead, the burden is on defendants "to show that an antagonistic defense would present a conflict so

prejudicial that defenses are irreconcilable, and the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." *Id.* (citations omitted). To "contend that the very nature of [the] defenses, without more, prejudiced" defendants is insufficient; they must articulate "specific instances of prejudice." *Zafiro*, 506 U.S. at 540.

The assertion that antagonistic defenses will produce prejudice is perplexing since Martland's short, imprecise discussion of the limited grounds for his argument suggests little, if any, antagonism exists. Martland observes that this case is based upon allegedly fraudulent advertising and sale of military and military style boots as American made and compliant with government purchasing domestic preference laws and summarizes that the Superseding Indictment charges fraud based upon representations that Wellco boots were compliant with the Berry Amendment and Trade Agreements Act and were "Made in the USA." [Doc. 92]. He argues that he has consistently maintained that he did not have training on import/export compliance, did not know who directed that American flag labels be covered, that the Wellco warehouse was a "disorganized mess," and that while some lower quality boot components were made in China, none of the components could be mixed with components made in the United States [Doc. 92, p. 5]. Further, he asserts he denied to law enforcement that Chinese made boots were sold to the United States, was unaware this may have happened, he and his team were "tasked" with removing "Made in China" labels from boots, and he had been turned down for training for his position as shipping manager. [Doc. 92, p. 6]. In other words, Martland asserts he is innocent.

Martland next addresses statements of his co-defendants. He claims that Lee Ferguson and Stephanie Kaemmerer corroborate his position that he lacked authority to make decisions or direct the processes that are at issue in their statements to law enforcement. [Doc. 92, p. 6]. He notes that Ferguson and Kaemmerer advised, for example, that they and others who did not include Martland were the persons involved in deciding to remove "Made in China" labels from boots.

Lastly, Martland argues that Neil Streeter told law enforcement that he and others knew boots used to fulfill government contracts were not Berry Amendment complaint and that he signed documents certifying boots were compliant when they were not. Martland notes that Streeter's statements did not allege Martland's involvement.

Martland argues that his claims of innocence and the statements are consistent in showing that he was not doing anything wrong and that he "was not involved with the allegations in the Superseding Indictment." Oddly, he also asserts his co-Defendants' statements could be considered inconsistent and inculpating, i.e. antagonistic.

The information Martland provided regarding certain statements of his co-Defendants does not reflect a trial defense to be employed by the co-Defendants. In fact, the information appears potentially inculpatory only to those parties while exculpatory to Martland. It certainly does not establish the existence of mutually antagonistic defenses.

Martland has offered no other grounds to demonstrate other potentially antagonistic defenses may arise. Without mutually antagonistic defenses, specific instances of prejudice necessarily do not exist to support severance. Even if the Court presumed Martland established that mutually antagonistic defenses exist, he made no effort to demonstrate that "less drastic measures [than severance], such as limiting instructions," will fail to cure a potential risk of prejudice. *See Zafiro*, 506 U.S. at 539, 113 S.Ct. at 938. The Court has no reason to believe that the jury will be incapable of making reliable judgments as to guilt and innocence with proper instructions. Therefore, the Court declines to implement the "drastic" measure of severing Martland's trial from that of the other Defendants.

**3.     Confrontation Clause Issues**

Martland urges that severance is necessary to avoid violation of the Sixth Amendment's Confrontation Clause. He believes that the Government's likely use of his co-Defendant's

incriminating out-of-court statements will violate his constitutional rights as outlined in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

The Supreme Court held in *Bruton* that an out-of-court confession by one defendant that implicates another defendant may not be introduced during a joint trial if the declarant defendant does not testify. 391 U.S. at 137, 88 S.Ct. at 1628. The use of such a confession violates the person's constitutional right to confront witnesses against him via cross-examination. *Id.* This rule applies regardless of limiting instructions to the jury to consider a confession only against the person making the confession. *Id.* Thus, "where two defendants are tried jointly, the pretrial confession of one cannot be admitted against the other unless the confessing defendant takes the stand." *Richardson v. Marsh*, 481 U.S. at 206, 107 S.Ct. at 1707.

Despite the foregoing, a trial court has options other than severance to protect against Confrontation Clause violations. A trial court can require redaction of a confession to eliminate reference to or implication of a co-defendant who did not confess in conjunction with the use of limiting instructions to the jury. *United States v. Vasilakos*, 508 F.3d 401, 407-08 (6th Cir. 2007). Such steps are in accordance with the Sixth Amendment even though a jury might conclude that a confession implicates a co-defendant "by linking a statement to other evidence." *See United States v. Ford*, 761 F.3d 641, 654 (6th Cir. 2014).

The Supreme Court further addressed the scope of the Confrontation Clause in *Crawford* and held that it bars admission of out-of-court testimonial statements unless the declarant was or is subject to cross-examination. 541 U.S. at 68, 124 S.Ct. at 1374. In short, the Court clarified that Confrontation Clause protections only apply to testimonial statements. Subsequently, the Sixth Circuit explained that *Bruton* does not apply to nontestimonial statements. *United States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009). Ultimately, *Crawford* and *Bruton* have dual impacts.

First, as noted, *Bruton* does not apply to a nontestimonial out-of-court statement that does not incriminate a co-defendant. *United States v. Pugh*, 273 Fed.Appx. 449, 454-55 (6th Cir.2008). Rather, the Federal Rules of Evidence govern the admission of such non-testimonial statements. *See United States v. Arnold*, 486 F.3d 177, 192–93 (6th Cir.2007) (en banc). Next, if a defendant's out-of-court statement is testimonial, the trial court conducts a *Bruton* analysis to determine whether the statement implicates a co-defendant and whether the declarant will testify, and if not, whether the statement can be redacted for use at trial.

Here, Martland seeks severance based upon *potential* Constitutional violations. Absent from his motion is an identification of any out-of-court statement that may incriminate him. Rather, as discussed above, the quoted statements of his co-Defendants do not appear to implicate him. They make no reference to Martland and, in some instances, are potentially exculpatory. Even if these statements are in some way incriminating, Martland's motion does not articulate any other grounds to support severance.[2] Martland's motion fails to make the required showing of compelling, specific and actual prejudice.

### III. Conclusion

For the foregoing reasons, the Defendant Martland's Motion for Severance of Defendants at Trial [Doc. 91] is **DENIED**. Further, the Motion for Severance of Defendants at Trial, as adopted by Defendants Vincent Ferguson and Kerry Ferguson, is DENIED as moot as a result of the oral withdrawal of such motions at the December 4, 2017, pretrial conference.

---

[2] Martland does not expect his co-defendants to testify at trial and he will be unable to cross-examine them regarding their statement or to mitigate spillover testimony. [Doc. 92, p. 11] Such a position generally does not support severance. *United States v. Causey*, 834 F.2d 1277 (6th Cir. 1987) ("motion for severance on ground of absence of a codefendant's testimony must be accompanied by more than a basic, unsupported contention that a separate trial would afford exculpatory testimony").

SO ORDERED:

s/ Clifton L. Corker
United States Magistrate Judge